MARGUERITE BOYCE, complainant,

*v.*

HARRISON H. BOYCE, JACQUELINE H. BOYCE and WHITE LABORATORIES, INC., a New Jersey corporation, defendants.

[Decided September 30th, 1940.]

*Mr. Herman Dultz,* for the motion.

*Messrs. Lum, Tamblyn & Fairlie* (by *Mrs. Eleanor Lowenstein Zoob*), *contra.*

GROSMAN, A. M.

This is an application by the complainant, under *R. S. 2:29-46,* for an order to strike out the answer filed by the defendant Harrison H. Boyce to the complainant's first cause

of action, as amended, on the ground that said answer is frivolous and fails to disclose a sufficient defense. The only objection offered to the motion is a challenge to the jurisdiction of this court over the subject-matter of the suit.

The defendant Harrison H. Boyce was originally represented in this litigation by Messrs. Proctor & Nary, of Asbury Park. After process was served upon said defendant Harrison H. Boyce, his then proctors moved, among other things, "to dismiss the bill of complaint because it fails to set forth equitable grounds and for the further reason that this court lacks jurisdiction in the premises." This motion was duly argued and denied by order entered herein the 11th day of October, 1939. On November 21st, 1939, by consent of Messrs. Proctor & Nary, said defendant's present solicitors, Messrs. Lum, Tamblyn & Fairlie, were substituted in their place and stead. On the same date, this defendant's present solicitors again moved to strike out and dismiss the bill of complaint and "all three causes contained therein," on the following grounds:

"1. The complaint and the alleged three causes of action therein set out, set up no matter of equitable cognizance.

"2. This honorable court lacks jurisdiction to grant the relief prayed for against these defendants in the bill of complaint and the alleged three causes of action therein set out.

"3. The complainant has an adequate remedy at law.

"4. The three alleged causes of action set forth in the complaint refer to a foreign decree for alimony not reduced to a domestic judgment.

"5. The complaint and the three alleged causes of action therein set forth are without equity.

"6. The complaint and the alleged three causes of action therein set forth do not state a cause of action against these defendants.

"7. The complainant is not entitled to the relief prayed for as to any of the alleged three causes of action set forth in the complaint.

"8. The complaint and the alleged three causes of action therein set forth do not allege facts which entitle the complainant to any relief in this court."

This motion was denied because it was similar in all respects to that theretofore made by this defendant's original solicitors and consequently the subject-matter was *res adjudicata*.

On the present motion, said defendant again raises the issue of jurisdiction. Upon the denial of a motion of this sort, the defendant is squarely before the court and within its jurisdiction for all purposes of the suit. He may not again raise the same issue before this tribunal. Particularly is this so, where, after the denial of his motion, he answers to the merits. The fact that in his answer he reserves the right to again move for a dismissal of the bill, on final hearing, upon the same grounds, is of no legal effect, unless, of course, the court is wholly without jurisdiction over the person of the defendant or the subject-matter of the suit, in which event the proceedings would be wholly lacking in legal effect. I do not conceive such to be the instant case. *Polhemus v. Holland Trust Co. (Court of Errors and Appeals), 61 N. J. Eq. 654; 47 Atl. Rep. 417.* On a plea of this nature, all of the facts contained in the bill of complaint are admitted for the purpose of the motion. *Baum v. Canter (Court of Errors and Appeals), 104 N. J. Eq. 224; 144 Atl. Rep. 588.* It will therefore be observed that thrice this defendant has admitted all of the allegations of the bill of complaint to be true, but contended that notwithstanding, they fail to constitute an equitable cause of action and that this court has no jurisdiction over the subject-matter.

The admitted facts as disclosed by the bill of complaint are these: On May 12th, 1903, the defendant Harrison H. Boyce married the complainant in the city of New York. One child was born of the union. On the 21st day of June, 1922, this complainant, upon proceedings duly had in the New York Supreme Court obtained a decree of divorce from said defendant on the ground of adultery, committed with one Nancy Hawthorne, whom he subsequently married. The decree allowed complainant the sum of $2,000 per month for her support and maintenance and that of her son. Said decree remains in full force and effect. Personal service was obtained upon the defendant, who was then a citizen and

resident of the State of New York. Said defendant made said monthly alimony payments of $2,000 each until June, 1930, when, without legal warrant, he attempted to reduce said allowance to $1,500 per month. Thereupon proceedings were initiated in the New York Supreme Court to sequester his property. The matter was amicably settled between the parties by said complainant agreeing to accept alimony at the rate of $1,000 per month, commencing March 1st, 1931, for her sole support, her son, in the meantime, having arrived at maturity.

About this time the defendant became involved in marital difficulties with his second wife. He was made the defendant in a suit for alienation of affections by one John J. Athana, his brother-in-law, who sought to recover $1,000,000, allegedly for the reason that said defendant was then living with the wife of said John J. Athana. This action was settled out of court. Mrs. Jacqueline H. Athana, the wife of John J. Athana, is the sister of said defendant's second wife and is one of the defendants herein, she now being known as Mrs. Jacqueline Hawthorne Athana Boyce. As a result of said defendant's doings with his then sister-in-law, Jacqueline Hawthorne Athana, the defendant's second wife obtained a divorce from bed and board from him in the New York Supreme Court about the month of October, 1931, on the ground of adultery. The decree awarded her, directed the defendant to pay his second wife alimony at the rate of $1,000 per month. Thereafter, Mrs. Jacqueline Hawthorne Athana, the co-respondent in said defendant's second divorce suit, obtained a divorce from her husband in Mexico and went to live with the defendant Harrison H. Boyce in New York City, and has been living with him ever since. Complainant charges that she is unaware whether or not said defendant and his erstwhile paramoor, Jacqueline Hawthorne Athana, were ever married.

About April 12th, 1932, this defendant applied to the New York Supreme Court for an order dispensing with further payments of alimony to the complainant herein for a period of two years. The matter was referred to the Honorable Henry G. Wenzel, one of the referees of the New York

Supreme Court, who after hearing testimony and rather facetiously observing that "of all expensive hobbies, the collection of wives is the most expensive," denied the defendant's application.

Thereafter, on or about the 31st day of March, 1933, the defendant Harrison H. Boyce absconded from the State of New York and secreted himself in places unknown to the complainant. From then on the complainant was unaware of said defendant's whereabouts until shortly prior to the institution of this suit, when she learned that he was living with his former paramoor, now allegedly his wife, at Allenhurst, New Jersey, whereupon this suit was initiated by writ of *ne exeat* and restraint against alienation of assets. From March, 1933, to date, no money was paid by said defendant to the complainant on account of her alimony and on the filing of the bill in this cause, there was due and owing to her under said New York decree and judgment, the sum of $78,000, representing arrears of alimony for a period of seventy-eight months.

At the time that complainant consented to a reduction of her alimony by the New York Supreme Court, from $2,000 per month to $1,000 per month, namely, on or about the 27th day of February, 1931, as before mentioned, this defendant pledged as collateral security for the performance of said New York decree, as modified, 1,650 shares of stock of the Leander Development Corporation, of which he was the sole stockholder. The assets of this company amounted to hundreds of thousand of dollars. Amongst them was 750 shares of stock of a corporation known as the Health Products Company, a New Jersey corporation. This stock for years had been paying dividends at the rate of $12,000 per annum and was reasonably worth the sum of $200,000. The name of the Health Products Company was subsequently changed to that of White Laboratories, Inc. By a series of devious and tortuous transfers, said stock was conveyed voluntarily and without consideration, by the Leander Development Corporation, to Mrs. Jacqueline Hawthorne Athana Boyce, the defendant's alleged present wife, who herself is a defendant herein. The defendant Harrison H. Boyce was able to accom-

plish this transfer apparently because while he had consented to a transfer of 1,650 shares of stock of the Leander Development Corporation, to a trustee, as collateral security for the performance of said New York alimony decree, nevertheless, he apparently retained control over the affairs of the company, by reason whereof he was able to siphon out of the Leander Development Corporation, all of its assets. Therefore, when the complainant herein sought to forfeit the stock collateral which said defendant had deposited with her trustee as security for the payment of alimony, she found that said Leander Development Corporation was nothing but an empty shell, having been stripped of all its assets by the defendant Harrison H. Boyce.

In this posture of affairs, the complainant filed a bill of complaint, containing three counts, in this court. The first count with which we are presently concerned, sets up the decree of divorce in New York against the defendant Harrison H. Boyce; the allowance of alimony thereunder; proper jurisdiction of said defendant, who was personally served within the jurisdiction of the New York Supreme Court; and that there is due and owing to the complainant from said defendant, under said decree and subsequent judgment, the sum of $78,000. Since the filing of the bill, the complainant, because of the peculiar nature of alimony decrees, caused to be entered in the New York Supreme Court, on the 1st day of December, 1939, a final judgment in favor of the complainant and against the defendant Harrison H. Boyce, in the sum of $78,000, for which sum said court directed that this complainant have execution. By stipulation, the bill was amended to include this fact.

The second count prays that the decree of divorce obtained by the complainant in the New York Supreme Court be given full faith and credit, confirmed by the decree of this court and that alimony *in futuro* be allowed her in accordance with her needs, the defendant's faculties and the practice of this court.

The third count is one for discovery, praying that the transfer of the 750 shares of stock now held by the defendant Jacqueline Hawthorne Athana Boyce be decreed fraudulent;

that the defendant Harrison H. Boyce be decreed to be the true, equitable and legal owner of said stock and that the complainant may have her claim satisfied therefrom. It is represented that said defendant Harrison H. Boyce is penniless and judgment proof.

The gravamen of the defendant's objection to the first count of the complaint is that it seeks merely a money decree, namely, the sum of $78,000 due and owing to the complainant from the defendant under the judgment of the New York Supreme Court, which relief may be had only in the law courts. If this was the only relief sought by the complainant, there might be some merit to his contention, not because this court lacks jurisdiction over an action of this nature, but because, as a matter of policy, expediency and precedent, suits of this kind are usually left to the law courts. *Dawson* v. *Leschziner, 72 N. J. Eq. 1; 65 Atl. Rep. 449.*

The right, however, of this court to adjudicate questions "ordinarily determinable at law, arising in a suit of which this court has jurisdiction" cannot be successfully challenged. See opinion of Court of Errors and Appeals in *Hart* v. *Leonard, 42 N. J. Eq. 416; 7 Atl. Rep. 865;* also *Lidgerwood Estates, Inc.,* v. *Public Service, &c., Co., 113 N. J. Eq. 403; 167 Atl. Rep. 197; Falaneau* v. *Reliance Steel Foundry Co., 74 N. J. Eq. 325; 69 Atl. Rep. 1098.*

By "*The Chancery act (1915)*," *R. S. 2:29-10,* jurisdiction is expressly conferred upon this court to adjudicate questions ordinarily determinable at law. The statute is to this effect:

"*Determination of Questions of Law.* Any question, ordinarily determinable at law, arising in a suit of which the Court of Chancery has jurisdiction, other than a question requiring a jury trial or a determination upon *certiorari, mandamus* or *quo warranto,* shall be determined by the Court of Chancery in that suit; or the Chancellor may, in his discretion, send such question to the Supreme Court for its opinion to be certified, retaining jurisdiction of the cause as provided by section 2:29-9 of this title."

See opinion of Fielder, V. C., construing this statute in *Commercial Trust Co.* v. *Bellhall Co. (Court of Errors and Appeals), 119 N. J. Eq. 30; 181 Atl. Rep. 63.*

In the instant case, the relief sought by the first cause of action is ancillary to that prayed for in the second and third counts of the complaint, namely, alimony *in futuro* and the setting aside of the defendant's alleged fraudulent transfer of assets. The right of this court to entertain the complainant's second cause of action is presently beyond doubt. In *Hughes* v. *Hughes, 125 N. J. Eq. 47; 4 Atl. Rep. (2d) 238*, the Court of Errors and Appeals held that this court was without jurisdiction to entertain a bill for alimony *in futuro* under a foreign decree; and the complainant's only remedy was by suit at law for accrued alimony. Following this decision, jurisdiction over actions of this nature was expressly conferred upon this court by legislative enactment, *R. S. 2:50-35:*

"*Decrees of Other States or Countries; Full Faith and Credit; Exceptions.* Full faith and credit shall be given in all Courts of this State to a decree of annulment of marriage or divorce by a Court of competent jurisdiction in another State of the United States when jurisdiction of such Court was obtained in the manner and in substantial conformity with the conditions prescribed in Sections 2:50-9, 2:50-10 and 2:50-11 of this title. Nothing herein contained shall be construed to limit the power of any Court to give such effect to a decree of annulment or divorce by a Court of a foreign country as may be justified by the rules of international comity; provided, that if any inhabitant of this State shall go into another State or Country in order to obtain a decree of divorce for a cause which occurred while the parties resided in this State, or for a cause which is not ground for divorce under the laws of this State, a decree so obtained shall be of no force or effect in this State."

See, also, opinion of Herr, A. M., in *Levy* v. *Levy, 17 N. J. Mis. R. 324; 9 Atl. Rep. (2d) 779.*

The purpose of the enactment will be found in the *1938 Cumulative Supplement to the Revised Statutes, page 369.*

The statute was clearly intended to cover situations such as that presented in the instant case. Otherwise, New Jersey might well become a haven for men who see fit to abandon their former wives and their minor children, in some other state of the Union, where they may be living in the direct poverty, while their natural and legal guardian may be residing in this state in the most sumptuous luxury, denying their families even the bare necessities of life. Suit at law is not the remedy for such abandoned dependents. It would require continuous and expensive litigation for a wife holding a foreign alimony decree to sue her husband periodically as

her alimony becomes due. Usually the allowances made for this purpose are extremely modest. In most instances the cost of legal services would exhaust them. Such a spectacle would not only shock the conscience but would be contrary to the public policy of any civilized state.

This defendant admits the validity of the New York judgment against him. At the time of its rendition, he was a resident and citizen of the State of New York. He was personally served with process within its jurisdiction. He appeared and defended the suit. He concedes the sum of $78,000 is due thereunder. His answer presents no legal or factual issue. The only objection he raises is that he is entitled to have the New York judgment confirmed in the law courts and not in this. His objection is captious and constitutes nothing more than a vexacious attempt to delay the complainant in quest of her rights. Assuming, for the sake of argument, that I were to grant the defendant's motion for a dismissal of this count, or as provided by law, I were to transfer this action to the law courts for disposition, according to their practice, what then would be the result under the admitted facts of this case? The complainant would file her complaint. The defendant would be required to admit that said judgment was rendered against him by a court of competent jurisdiction upon due process served upon him personally and that he is indebted to the complainant in the sum of $78,000. Thereupon the law court would promptly' enter a judgment for the complainant and against the defendant for the amount due. Complainant would then be required to come back into this court and litigate her third cause of action for discovery, &c., in an attempt to satisfy her judgment at law. All of which would be a needless and senseless waste of time and effort; and would accomplish nothing but unwarranted delay. Equity has complete jurisdiction to enforce a legal right, the existence of which is clear and not in substantial dispute. *Redrow* v. *Sparks, 75 N. J. Eq. 396* (at *p. 398*) ; *72 Atl. Rep. 442; Robins* v. *Robins, 103 N. J. Eq. 26; 142 Atl. Rep. 168; Gasteiger* v. *Gasteiger, 5 N. J. Mis. R. 315, 136 Atl. Rep. 497.*

The redress prayed for in the third cause of action is a proper concomitant for the relief sought in the second cause

of action. Irrespective of whether or not the complainant is a creditor of this defendant Harrison H. Boyce in a legal sense, she is entitled to maintain her third cause of action to discover and establish said defendant's true faculties and the value of his estate to the end that complainant's alimony may be fixed upon a proper basis, in accordance with her station in life and the defendant's means. See opinion of Van Winkle, A. M., in *Clark* v. *Clark, 13 N. J. Mis. R. 49; 176 Atl. Rep. 81;* also *Grobart* v. *Grobart (Court of Errors and Appeals), 119 N. J. Eq. 565; 182 Atl. Rep. 630.* This court having taken jurisdiction for one purpose will assume same for all purposes to the end that complete justice may be done expeditiously. *Bullock* v. *Adams' Executors, 20 N. J. Eq. 367* (at *p. 374*).

The speedy and expeditious administration of justice is at all times a judicial objective. This is particularly true in cases of·this nature, where an aggrieved wife seeks to compel her former husband, whose moral and legal guilt has been, established by judicial decree, to maintain and support her and, at times, infant children. What women usually seek to recover in actions of this nature is "bread money" and such suitors are entitled to every aid that this court may give them to compel recalcitrant defendants to speedily supply them with the means of sustenance as decreed by our courts. Were it otherwise, wealthy defendants might conceivably, by protracted and vexacious litigation, withhold maintenance from their families until they were reduced either to beggary or starvation.

A further objection raised by the defendant to this motion, though not seriously pressed, is that the complainant having filed her replication to this defendant's answer, she should not now be permitted to withdraw her replication and move to strike the answer irrespective of the merits. This court at all times has complete control over its pleadings and may make such order as is deemed necessary to facilitate business and advance justice. *Chancery rules (1938) (rule 4).*

Complainant's motions for leave to withdraw her replication and to strike the answer of the defendant Harrison H. Boyce to the first count of the complaint, are allowed. Submit an order in accordance herewith.